IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | |
| DWAYNE ANTONIO JACKSON, | : | CRIMINAL ACTION NO. |
| | : | 1:15-CR-244-LMM-CMS |
| Defendant. | : | |

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [25] recommending that Defendant Dwayne Antonio Jackson's Motion to Suppress Evidence [18] recovered by law enforcement from a bedroom in his aunt's apartment be granted. The Government has filed timely objections [30] to the R&R. According to the Government, the Magistrate Judge erred in not finding reasonable the investigating officers' belief that Defendant's girlfriend had authority to consent to a search of the bedroom where they had slept the previous night. Defendant has filed a response in opposition to Defendant's objections [32].

Upon review of the record and due consideration, the Court **ADOPTS** the Magistrate Judge's R&R [25] as the findings of this Court.

**I.      Standard of Review**

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate's Report and Recommendation for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.; Fed. R. Crim. P. 59(b)(3). As the Government filed timely objections to the R&R with respect to its findings regarding and analysis of Defendant's motion to suppress evidence, the Court reviews the Magistrate Judge's findings and recommendations regarding these conclusions on a *de novo* basis. All other recommendations are reviewed for clear error.

**II.     Facts**

The R&R ably recounts the relevant facts derived from the parties' briefing and from the evidentiary hearing concerning Defendant's motion. See Dkt. No. [25] at 1-5. The Court summarizes the relevant facts as follows for purposes of its discussion.

Defendant and his girlfriend, Ms. Matheny, were detained by local police following a shooting in McDonough, Georgia. While under questioning, Ms. Matheny said that she knew the location of the firearm allegedly used in the shooting: under the mattress in the spare bedroom of an apartment belonging to Defendant's aunt, Ms. Jackson. This is the bedroom where Ms. Matheny and Defendant had slept the previous few nights. Ms. Matheny did not pay rent or

receive mail at Ms. Jackson's apartment, lacked a key to the apartment, only entered or stayed at the apartment when in the company of Defendant, and could only enter the apartment if the door was unlocked or if Ms. Jackson let her inside when she and Defendant knocked.[1]

Despite these limitations on access, Ms. Matheny volunteered to show the investigating police officers where the gun was located and to retrieve the weapon for them. The officers discussed several methods to retrieve the firearm from the bedroom in Ms. Jackson's home, including obtaining a search warrant. The officers ultimately decided that Sergeant Morris would accompany Ms. Matheny to Ms. Jackson's home in plainclothes, without revealing that he was a law enforcement officer, and pose as a relative of Ms. Matheny. When Ms. Matheny knocked on the door to enter, she would tell Ms. Jackson that Sergeant Morris was her cousin, Ms. Jackson would allow them into her home, and Sergeant Morris would covertly retrieve the firearm. That is what happened.

The Government does not contend that the officers had a search warrant or that exigent circumstances justified a warrantless search. Had Ms. Jackson questioned Sergeant Morris's persona, or denied entry to Ms. Matheny, the officers had planned either to obtain a warrant or to ask for consent to search the

---

[1] Though Ms. Matheny claimed she and Defendant could come and go from the apartment as she pleased, Dkt. No. [21] at 49, and told police officers during the interview that she could do so, id. at 25, Ms. Jackson testified at the hearing that Ms. Matheny did not have the freedom to come and go from the apartment as she liked without Defendant. Id. at 70-71.

3

premises from Ms. Jackson, and if that failed, to secure the apartment and to pursue a search warrant.

### III. Analysis

The Government primarily objects to the R&R on the grounds that the Magistrate Judge improperly concluded the officers' reliance on Ms. Matheny's apparent authority to consent to a search of the spare bedroom in Ms. Jackson's apartment was not reasonable. Dkt. No. [30] at 7-12. The Government argues that the Magistrate Court construed the issue of whether the officers' belief in Ms. Matheny's apparent authority was reasonable "on too large a scale." Id. at 7. The Government relies heavily on the notion espoused in U.S. v. Matlock of "common authority" being applicable not only "to the premises" but to the "effect sought to be inspected." 415 U.S. 164, 171 (1974). Dkt. No. [30] at 7-8. The Government contends that all the officers needed to reasonably believe, then, was that Ms. Matheny has "common authority" over the mattress in the bedroom inside the apartment. The Government asserts that this is a reasonable belief because Ms. Matheny and Defendant had slept in that bedroom for the preceding days, had personal belongings there, and Ms. Matheny claimed both a right to come and go as she pleased and a close relationship with Ms. Jackson. Dkt. No. [30] at 8-9.

The Government's arguments ignore the realities of Ms. Matheny's access to the room in question. It is undisputed that Ms. Matheny could not access the apartment – and thus the bedroom in question – unless Ms. Jackson unlocked the front door. It is also undisputed that Ms. Matheny informed the officers of

4

this fact prior to the search. This is enough to render the officers' belief in Ms. Matheny's authority to consent to a search unreasonable. Despite the Government's argument to the contrary,[2] the record is clear that the officers were on notice that Ms. Matheny could not come and go from Ms. Jackson's house as she pleased, but depended on others for access.

It is well-settled that an occupant may grant consent, in the absence of another occupant, to search areas of a dwelling over which the consenting occupant exercises common authority, access, or control. Matlock, 415 U.S. at 172 & n.7. A tenant, for example, could grant consent to search the commonly used kitchen while her co-tenant was out, but could not validly grant consent to search the absent co-tenant's bedroom. Similarly, as in U.S. v. Weeks, 666 F. Supp. 2d 1354 (N.D. Ga. 2009), *aff'd*, 442 F. App'x 447 (11th Cir. 2011), an occupant would have apparent authority to consent to a search of an apartment where law enforcement entered to find the occupant there with her children and was able to direct the officers to a specific bedroom upon request. Weeks at 1377-78. The Court concludes, however, that this line of cases does not extend so far as to allow a co-occupant to grant valid consent to search an area over which she exercises common authority, when she does not exercise authority, access, or control over the entrance and exit to that space.

---

[2] "In the days they had been staying at Ms. Jackson's, neither Ms. Matheny nor the Defendant had a key to the apartment, but they came and went as they pleased, simply entering the apartment if the door was unlocked or knocking on the door for Ms. Jackson to let them enter if it was." Dkt. No. [30] at 9.

5

The case of U.S. v. Green is instructive. No. 4:10-cr-21-RLV-WEJ, 2010 WL 4877872 (N.D. Ga. Oct. 6, 2010) (report and recommendation), *adopted by* 2010 WL 4876878 (N.D. Ga. Nov. 23, 2010). In Green, the judge considered whether the nephew of the defendant, who lived on the same family compound, had apparent authority to give a sheriff's deputy lawful consent to enter and search the defendant's apartment. The court observed that the Government "did not show that [the nephew] enjoyed mutual use of the apartment or that he had joint access or control over it for most purposes. … [T]here was no evidence that he lived in the apartment, had a key to it, or exercised any dominion over it." Green, 2010 WL 4877872 at *6. The Government argued that the deputy reasonably believed that the nephew had authority to consent to search in light of his access to the defendant's apartment, actual presence in the apartment, and familial relationship to the defendant. Id. at *1-2, 7.

> In response, the court noted that
>
> Rodriguez placed some responsibility on the officer to assess the situation he faces critically: [e]ven when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. This duty of inquiry is triggered, for example, when the officer obtains information that is subject to differing interpretations. In this case, it is undisputed that [the nephew] invited [the sheriff's deputy] to enter his uncle's apartment. However, it would be unreasonable for law enforcement agents to believe in every instance that someone who invites them into a home or a room is authorized to do so.

Id. at *7. (citations, internal quotations, and footnotes omitted). The court went on to accept the suggestion in Rodriguez that, "in the absence of sufficient facts,

6

officers have a duty to seek further information in order to determine whether they may reasonably infer that the inviter has the necessary authority to consent to an entry or search of the premises." Id. (quoting U.S. v. Rosario, 962 F.2d 733, 738 (7th Cir. 1992)); see also U.S. v. Dearing, 9 F.3d 1428, 1430 (9th Cir. 1993) ("the mere fact of access, without more, does not indicate that the access was authorized"). In Green, finding no facts available to the deputy at the time of entry allowed him to reasonably conclude that the nephew had common authority over the apartment, and that the facts available "would have led a reasonable person to make further inquiry into whether the nephew had authority to allow strangers to enter," the court granted the defendant's motion to suppress. Green, 2010 WL 4877872 at *9.

As in Green, the circumstances present when Sergeant Morris arrived on Ms. Jackson's doorstep did not suggest that Ms. Matheny enjoyed "joint access or control for most purposes" over any part of the apartment. The facts here actually favor Defendant to a greater extent than in Green, given Ms. Matheny's inability to exercise "joint access or control" over any part of the apartment without assistance from Ms. Jackson. Matlock, 415 U.S. at 172 n.7 ("common authority ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes").[3] Accordingly, the Court finds that the officers did

---

[3] To the extent the Government objects that the mattress, box spring, and bed frame in the spare bedroom should be considered "effects" over which Ms. Matheny exercised common authority for purposes of Fourth Amendment analysis, the Court overrules this objection. The Government does not support

not reasonably believe Ms. Matheny's representation that she could consent to a search of the apartment. That the officers felt the need to deceive Ms. Jackson about Sergeant Morris's identity and occupation to allow him entrance to the apartment buttresses this conclusion.

The Government cites to <u>Minnesota v. Olsen</u>, 495 U.S. 91 (1990), but that case does not compel a different result, for two reasons. <u>Olsen</u> concerned the defendant's standing to contest a search based on his legitimate expectation of privacy as an overnight houseguest in another's home. First, the Government has conceded that the Defendant has standing to contest the search, such that <u>Olsen</u> does not directly apply here. <u>See</u> Dkt. No. [25] at 6 n.3. Second, the Supreme Court allowed that an overnight houseguest without a key and never left alone in a dwelling could nonetheless enjoy a legitimate expectation of privacy, as "his host, who is willing to share his house and his privacy with his guest," is "unlikely" to keep the houseguest "confined to a restricted area of the house," but will allow him "a measure of control over the premises." <u>Olsen</u>, 415 U.S. at 99. Yet this "unlikely" scenario is just what Ms. Matheny described to police while being interviewed prior to the search. Ms. Matheny could not access the apartment on her own; she never before had been admitted to the apartment without being in

---

such an argument in its Objections, there is no evidence in the record that Ms. Matheny held any claim of ownership or interest in the components of her temporary bed, and the Court is without support for the proposition that a bed is sufficiently like an automobile (<u>U.S. v. Chadwick</u>, 433 U.S. 1 (1977), *abrogated on other grounds by* <u>California v. Acevedo</u>, 500 U.S. 565 (1991)), a duffel bag (<u>Frazier v. Cupp</u>, 394 U.S. 731 (1969)), or a suitcase (<u>U.S. v. Place</u>, 462 U.S. 696 (1983)) to be considered an "effect."

company of Defendant; she made no mention of enjoying the apartment beyond the confines of the spare bedroom; and all of her possessions in the apartment were in the bedroom. By her own account, Ms. Matheny did not exercise control over the premises aside from sleeping in a designated room and leaving a few personal items in that room, only while in Defendant's company.

That Ms. Jackson would be expected to "respect the privacy interests of [her] guests" in accordance with "understandings that are recognized and permitted by society" does not convey to her houseguest the consent to search any part of Ms. Jackson's dwelling, over which she possesses ultimate dominion and control. Id. at 99-100; see also U.S. v. Arzate, No. 1:12-CR-329-2-TCB, 2014 WL 1256075, *9 (N.D. Ga. Mar. 26, 2014) (collecting cases where houseguest who occasionally stayed overnight in dwelling lacked reasonable expectations of privacy in room in which he slept). That Ms. Matheny was only allowed to stay at Ms. Jackson's apartment when Defendant was present further diminishes the reasonableness of her expectation of privacy in the apartment, and thus of her ability to consent to its search. See U.S. v. Rose, 613 F. App'x 125, 129 (3d Cir. 2015) (lack of permission and ability to enter apartment without another's consent indicative of inability to consent or deny permission to search apartment); U.S. v. Davis, 932 F. 2d 752, 757 (9th Cir. 1991) (same); U.S. v. Nabors, 761 F.2s 465, 469 (8th Cir. 1985) (same). It was not reasonable for the officers to believe that Ms. Matheny, a guest of a guest, exercised sufficient authority or control over the premises to grant valid consent to search them to

law enforcement, even with regard solely to that room where she had slept on occasion and for the preceding few nights.[4]

Considering the totality of the circumstances, Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973), only Ms. Jackson and possibly Defendant had actual or apparent authority to consent to the search of the dwelling. Neither of them consented. Ms. Jackson never had the opportunity to consent to the search due to Ms. Matheny and Sergeant Morris's deception.[5] The Government has not carried its burden to show that the search was conducted pursuant to lawful consent by one reasonably believed to have authority to give it, as required in these circumstances to render the search reasonable under the Fourth Amendment.[6]

---

[4] The Government's point that Georgia v. Randolph, 547 U.S. 103 (2006) does not apply here is well-taken. The Court finds that the Magistrate Judge did not rely on Randolph for the reasons the Government raises. Instead, the Magistrate Judge relied on Randolph to rebut the Government's argument that it would be "irrational" to allow Ms. Matheny to retrieve the weapon, but not to allow her and Sergeant Morris to do so together. Dkt. No. [25] at 12. That the officers were not comfortable with Ms. Matheny retrieving the gun on her own did not and does not legitimize her apparent authority to consent to the search. Indeed, as the Magistrate Judge emphasized, the officers' belief that they needed to conceal Sergeant Morris's law enforcement status from Ms. Jackson to gain entry to the apartment further weakens their claim of a reasonable belief in Ms. Matheny's apparent authority. Id. at 9-12.

[5] Much like the "removal of the potential objector [that] is not objectively reasonable" from the threshold of his home, and thus presumed to have occurred "for the sake of avoiding a possible objection," the deception of Ms. Jackson denied her any objectively reasonable opportunity to assert her right under Randolph as a present and objecting resident of the dwelling. Fernandez v. California, 134 S. Ct. 1126, 1134 (2014) (quoting Randolph, 547 U.S. at 121).

[6] The Government explains at length that the officers' use of deception to allow Sergeant Morris to retrieve the gun is a permissible investigative technique that should not be chilled by fears of exclusion of evidence. Dkt. No. [30] at 10-18. The Court declines to consider this argument as it was not presented to the Magistrate

Finally, the Court has reviewed the portions of the R&R to which the Government did not object, and has found no clear error in the Magistrate Judge's findings and recommendations.

## IV. Conclusion

In accordance with the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [25] as the findings of this Court. Defendant's Motion to Suppress Evidence [18] is **GRANTED**. The firearm seized from Ms. Jackson's home on September 22, 2011 may not be introduced at trial.

The trial in this action is hereby set to begin on Monday, April 11, 2016, at 9:30 AM in Courtroom 2107. The pretrial conference will be held on Thursday, March 31, 2016, at 2:00 PM in Courtroom 2107. By noon on Thursday, March 17, 2016, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Thursday, March 17, 2016, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire.* By noon on Thursday, March 24, 2016, the parties are to file any objections to those items listed above.

Excludable time is allowed through April 11, 2016, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the

---

Court, and expresses no opinion as to its merit. Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we ... hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

11

exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.

    **IT IS SO ORDERED** this 26th day of February, 2016.

_____
LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE